# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSH THOMAS, | CV F 00-5817 AWI SMS P |
| Plaintiff, | |
| v. | FINDINGS AND RECOMMENDATIONS REGARDING MOTION FOR SUMMARY JUDGMENT (Doc. 130.) |
| D.L. STEPHENS, et. al., | |
| Defendants. | |

Plaintiff Josh Thomas ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in a civil rights action pursuant to 42 U.S.C. § 1983.

**I. RELEVANT PROCEDURAL HISTORY**

Plaintiff filed the instant action on May 31, 2000. This action is proceeding on Plaintiff's First Amended Complaint, filed October 30, 2000. On March 29, 2002, Defendants filed a Motion to Dismiss the First Amended Complaint. The Court issued Findings and Recommendations on June 24, 2002, that Defendants' Motion to Dismiss be denied. The Recommendations were adopted in full by the District Judge on August 13, 2002. On March 17, 2003, Defendants answered the First Amended Complaint. On April 15, 2003, Defendants filed a Motion to revoke Plaintiff's in forma pauperis status. On August 19, 2003, the Court issued

1

Findings and Recommendations recommending that Defendants' Motion be denied. The Recommendation was adopted in full by the District Judge on November 5, 2003.

On December 23, 2003, Defendants filed a Motion for Summary Judgment. Plaintiff filed his Opposition to the Motion for Summary Judgment on January 22, 2004.[1] This Court issued Findings and Recommendations that the Motion for Summary Judgment be denied with respect to Plaintiff's Eighth Amendment claim and granted with respect to the remaining claims. (Doc. 120.) The Court also recommended that Plaintiff's American's with Disabilities ("ADA") claim be dismissed for failing to state a claim and that Defendants Harlow and Seeley be dismissed from the action on the same basis. Id.

On September 10, 2004, the District Court Adopted the Recommendation with the exception of the Recommendation regarding the ADA claim. (Doc. 127.) The Court then granted Defendants leave to file a Motion to Dismiss or Motion for Summary Judgment on Plaintiff's ADA claim against Defendants Seeley, and Harlow based on the fact that he was excluded from his work position. Id.

On October 13, 2004, Defendants filed a Motion for Summary Judgment on the ADA claim only. (Doc. 130.) Plaintiff filed his Opposition to the Motion for Summary Judgment on November 15, 2004. (Doc. 137.)

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Under summary judgment practice, the moving party

> [A]lways bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

---

[1] The Court notes for the record that Plaintiff also filed a cross motion for summary judgment in addition to his Opposition on April 12, 2004. On April 20, 2004, Magistrate Judge Theresa A. Goldner issued Findings and Recommendations recommending that Plaintiff's Cross Motion for Summary Judgment be denied as untimely. (Court Doc. 112.)

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Rule 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"

Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Rule 56(c). The evidence of the opposing party is to be believed, Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, Matsushita, 475 U.S. at 587 (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)(*per curiam*). Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898, 902 (9th Cir. 1987).

Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

**III. UNDISPUTED FACTS**[2]

1. On February 13, 1998, Plaintiff was transferred from Avenal State Prison to the Substance Abuse Treatment Facility (SATF), in Corcoran California.
2. On August 28, 1998, Dr. Donald Deering, then Acting Chief Medical Officer at SATF, signed a medical chrono for Plaintiff which restricted him from work assignments requiring lifting more than 25 pounds, prolonged standing, and repetitive bending or stooping.
3. The restrictions imposed by Dr. Deering were similar to those specified in a subsequent chrono signed by Dr. Balikian, a staff physician at SATF, on March 24, 1999.
4. The restrictions imposed on Plaintiff's work assignments by Dr. Deering and Dr. Balikian did not preclude Plaintiff from being assigned to prison jobs that did not require

---

[2] The following facts are undisputed for the purpose of this Motion.

|   |   |
|---|---|
| | the activities prohibited in the chronos. |
| 5. | Plaintiff remained eligible for any assignments that did not require Plaintiff perform contrary to the restrictions outlined in the chrono. |
| 6. | Plaintiff was capable of working in the kitchen or doing yard work so long as the restrictions were observed.[3] |
| 7. | At the time Dr. Deering and Dr. Balikian signed the chronos, Plaintiff's physical condition did not interfere with his ability to care for himself or perform manual tasks or with walking, seeing, hearing, speaking, breathing, learning and working.[4] |
| 8. | From January 1999 to January 2000, Defendant Caetana was the inmate work crew supervisor in B Yard at SATF. |
| 9. | Approximately 20 inmates were in the work crew that Defendant Caetana supervised. |
| 10. | The work crew in Yard B generally performed light maintenance in the yard including sweeping the sidewalk and blacktop, picking up trash, hoeing and raking weeds, and washing windows.[5] |
| 11. | The maintenance work was generally performed at the same time by all inmates in the work crew and so each job was completed within a half hour or so.[6] |
| 12. | When Defendant Caetana began his term as work crew supervisor in Yard B, Plaintiff held the job position YDW-B-304 and was one of the inmates in Caetana's crew. |
| 13. | Plaintiff did not perform the general work of the Defendant Caetana's Yard B crew |

---

[3] Although Plaintiff says he "disputes" these facts, his explanation is merely that he could perform anything that did not require him to lift more than 25 pounds, stand for prolonged periods or bend or stoop repetitively. Thus, this fact is undisputed.

[4] Plaintiff "disputes" these facts, however, he provides no evidence that he had difficulty with any of these functions. That the chrono restricted him from prolonged standing, bending or stooping is not evidence that Plaintiff could not breathe, walk or perform any other work that did not involve the restrictions. Accordingly, this fact is undisputed.

[5] Plaintiff says he disputes these facts but he provides no evidence that the tasks assigned to the Yard B crew were anything other than what Defendant has described by way of Declaration. Accordingly, the fact is undisputed.

[6] Again, Plaintiff disputes this fact but provides no evidence contrary to the facts as set forth by Defendants regarding the time frame it took inmates to complete the tasks.

5

|     |     |     |
| --- | --- | --- |
|     |     | because of the restrictions imposed by the medical chronos.[7] |
|     | 14. | Defendant Caetana did not insist that Plaintiff work with the crew. |
|     | 15. | In and around January 1999, correctional officers at SATF used an office in the B Yard to do paperwork, maintain files, make and receive telephone calls, and keep personal property |
|     | 16. | Because correctional staff used the B Yard office to conduct prison work and kept items of personal property such as purses and car keys there, the office was off limits to inmates without supervision. |
|     | 16. | Plaintiff was never assigned to the position of "Recreation Coordinator Clerk."[8] |
|     | 17. | On February 27, 1999, Plaintiff was reassigned from the yard crew to a Teacher's Aide position (ESL-B-202), which had a higher pay grade and required no physical labor. |
|     | 18. | On March 5, 1999, Plaintiff was transferred to a different Teacher's Aide position (TEA-B-160). |
|     | 19. | On March 5, 1999, Plaintiff was transferred back to a position with a yard crew in Yard B (YDW-B-205), similar to the position he previously held under Caetana, but with different hours. |
|     | 20. | Almost continuously from March 31, 1998, through April 2000, Plaintiff held a prison job.[9] |
|     | 21. | As correctional officers, Lyman and Caetana had no responsibility or authority to place Plaintiff or any other inmate in a job. |
|     | 22. | The placement of inmates in jobs was the responsibility of the Classification Committee and the Inmate Assignments Office. |

---

[7] Here, Plaintiff indicates he disputes these facts because Caetana did not insist he perform these tasks. He does not dispute that he did not perform these tasks and thus, the fact as stated is undisputed.

[8] Although Plaintiff disputes this fact, he provides no evidence that he was ever assigned to this position. Defendants, however, have provided a work history indicating that Plaintiff was never assigned to this position. See, Defendant's Exh.6. Accordingly, this fact is undisputed.

[9] Plaintiff disputes this fact arguing that he was unemployed "until 6/1/98" and cites to Exhibit X. However, Exhibit X shows Plaintiff's custody classification and not his work history. Defendants Exhibit 6 demonstrates that Plaintiff was employed almost continuously throughout the time frame stated.

6

23. Neither Defendant Caetana or Lyman have ever served on the Classification Committee or the Inmate Assignment's office.

24. On January 5, 2000, Plaintiff went to the medical clinic with complaints of aches in his back and legs after "refereeing basketball games all week," and he was encouraged to rest and decrease daily exercise.

## IV. ANALYSIS

Under Title II of the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. To state a claim of disability discrimination under Title II of the ADA, a plaintiff must allege four elements: 1) the plaintiff is an individual with a disability; 2) the plaintiff is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; 3) the plaintiff was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and 4) such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability. Weinreich v. L.A. County Metro. Transp. Auth., 114 F.3d 976, 978 (9th Cir.1997).

   *A. Disability*

In order to qualify for protection under the ADA, Plaintiff must first establish that he is "disabled" within the meaning of the ADA. Toyota Motor Mfg., Kentucky, Inc. v. Williams, 534 U.S. 184, 122 S.Ct. 681 (2002). Merely having an impairment, however, does not make one disabled for purposes of the ADA. Id. at 690. Claimants also need to demonstrate that the impairment limits a major life activity. See, 42 U.S.C. § 12102(2)(A). "'Major life activities' refers to those activities that are of central importance to daily life." Toyota, 534 U.S. at 691. Accordingly, the Supreme Court held, for performing manual tasks to fit into this category along with basic abilities such as walking, seeing and hearing, the tasks must be central to daily life. This being so, "to be substantially limited in performing manual tasks, an individual must have an impairment that prevents or severely restricts the individual from doing activities that are of

central importance to most people's daily lives." Id.

Defendants argue that Plaintiff is not disabled within the meaning of the ADA and further that even assuming he is disabled, he was not discriminated against on the basis of his alleged disability. Specifically, Defendants contend that Plaintiff's conditions do not interfere with one or more of the "major life activities" as required under the ADA. In addition, Defendants argue that Plaintiff has not been deprived of participating in any service, program or activity or was discriminated against solely on account of his physical condition.

Defendants have presented evidence in the form of declarations that Plaintiff's conditions did not preclude him from being assigned to various prison jobs and that he was perfectly capable of working in the kitchen or doing yard work so long as the restrictions against lifting more than 25 pounds, prolonged standing and repetitive bending or stopping were observed. (Deering Decl. at 2.) In addition, Defendants present evidence that although Plaintiff's conditions required some restrictions in performing certain work related tasks, his condition did not prevent him from walking, seeing, hearing, speaking, breathing and learning. Id. Defendant's declarations also provide that Plaintiff's medical records contain no complaints of injury resulting from performing any job assignment. However, on January 5, 2000, Plaintiff complained to the clinic of back and leg pain stemming from "refereeing basketball games all week." Accordingly, based on the above, Defendants assert that Plaintiff was not disabled within the meaning of the ADA.

The Court finds Defendants have met their initial burden of informing the Court of the basis of the motion and identifying those portions of the record believed to demonstrate the absence of a genuine issue of material fact. Accordingly, the burden shifts to Plaintiff to demonstrate that a genuine issue of material fact exists. See, Matsushita Elec. Indus.Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

The evidence submitted by Plaintiff does not support his contention that he *is* disabled within the meaning of the ADA. Although Plaintiff provides evidence that he has flat feet, is diabetic and has an old back injury that restricts his ability to perform certain work tasks, he provides no evidence that any of these conditions interfere with the "major life activities" as set forth in Toyota v. Williams. As noted above, to be substantially limited in performing manual

tasks, an individual "must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives." Here, although Plaintiff cannot stand for prolonged periods, bend or stoop repeatedly or lift more than 25 pounds, daily life does not require Plaintiff him to do so. The chrono issued merely prohibits him from being required to do so. There is no evidence in the record that Plaintiff cannot bend or stoop, cannot lift anything under 25 pounds and cannot stand at all. The restrictions serve only to prevent him from aggravating his condition. However, they are not of the nature required to be considered "disabled" within the meaning of the ADA.

In addition, that Plaintiff has flat feet and is diabetic do not render him disabled. While it is true that Plaintiff must wear arch supports and must take medication on a daily basis to control his diabetes, his conditions do not interfere with his ability to care for himself or perform any other major life activities. That Plaintiff can perform these tasks without difficulty is supported by Plaintiff's ability to "referee basketball games all week." (Undisputed Fact # 2.)

Finally, the Court finds Plaintiff's many medical documents concerning the worsening of his conditions unhelpful in determining whether a disputed issue of facts exists. Plaintiff's allegation is that he was discriminated against on the basis of his disability when he was removed from his position on the B Yard crew in February 1999. Thus, the Court looks to Plaintiff's medical condition during this time frame to resolve the instant issue and not to his condition months and years later. That Plaintiff's conditions have worsened is unfortunate for him but does not support his contention that he was disabled *at the time* of the his job change.

Accordingly, based on the above, the Court concludes that Plaintiff's conditions did not render him "disabled" within the meaning of the ADA. <u>Toyota Motor Mfg. v. Williams</u>, 534 U.S. 184, 122 S.Ct. 681 (2002).

**B. Discrimination**

Even were the Court to assume, without deciding, that Plaintiff was disabled within the meaning of the ADA, the Court finds no evidence to support Plaintiff's assertion that he was discriminated against on the basis of his physical condition. Plaintiff's allegation is that he was

removed from his position on the Yard B crew on account of his back injury.[10]  However, Plaintiff concedes that he could not perform the work required for employment on the Yard B crew because "sweeping the blacktop, picking up trash, hoeing and raking weeds and washing windows all require lifting, prolonged standing, bending and stooping." (Plaintiff's Statement of Undisputed Facts at ¶ 15.)   It is undisputed that Defendant Caetana, the work crew supervisor, did not require Plaintiff to perform these tasks due to his physical limitations.  (Undisputed Fact #'s 13, 14.)  Plaintiff's inability and/or refusal to perform the assigned tasks of the Yard B crew is evidence that Plaintiff was unqualified to function in the position of Yard B crew member. This is an essential element of demonstrating that one qualifies for protection under the ADA. However, when Plaintiff was moved to a position requiring no physical labor from the position for which he was unqualified because he could not perform the necessary tasks, he complained that he was discriminated against.  Plaintiff appears to be under the mistaken impression that the ADA guarantees individuals with physical limitations placement in jobs that they cannot perform but it does not.  The ADA prevents individuals with disabilities from being denied participation in a program or benefit for which he qualifies on the basis of their disabilities.  <u>Weinreich v. L.A. County Metro. Transp. Auth.</u>, 114 F.3d 976, 978 (9th Cir.1997).   Plaintiff does not allege and there is no evidence to support that he was denied participation in any benefit, service, program or activity on the basis of his physical condition.

     It is further undisputed that the Defendants have no authority to place inmates in any particular jobs and that such decisions are made by the classification committee, none of whom are named as Defendants in this case. (Undisputed Fact #'s 21, 22, 23.)  Accordingly, Plaintiff's assertion that Defendants removed him from his job.

     Based on the above, the Court finds Plaintiff presents no evidence to demonstrate a genuine material issue of fact warranting trial and the Defendants are entitled to judgment as a matter of law on his allegation that Defendants removed him from his position on the Yard B crew on the basis of his physical condition.

---

[10] Plaintiff alleges repeatedly that he was the "Recreation Coordinator Clerk."  However, the undisputed evidence show that Plaintiff was never placed in such a position.  <u>See</u>, Defendant's Exhibit 6.

## V. CONCLUSION AND RECOMMENDATION

The Court HEREBY RECOMMENDS that the Motion for Summary Judgment on Plaintiff's ADA claim against Defendants Caetana, Lyman (formerly Stephens), Seeley and Harlow be GRANTED in favor of Defendants and the case proceed on the remaining Eighth Amendment Claim.

The Court ORDERS that these Findings and Recommendations be submitted to the United States District Court Judge assigned to this action pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within THIRTY (30) days after being served with a copy of these Findings and Recommendations, any party may file written Objections with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Replies to the Objections shall be served and filed within TEN (10) <u>court</u> days (plus three days if served by mail) after service of the Objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file Objections within the specified time may waive the right to appeal the Order of the District Court.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   May 24, 2005**             **/s/ Sandra M. Snyder**
icido3                                                UNITED STATES MAGISTRATE JUDGE